All right, our second case is TYR Tactical v. Protective Products Enterprises. Mr. Grady? May it please the Court. My name is Keith Grady. My partner, Graham Day, is with me at the Council table. We represent TYR Tactical in this appeal. This is an appeal from the District Court's Grant of Summary Judgment on TYR's breach of contract claims against Protective Products Enterprises and Point Blank. I'm going to refer to the defendant as Point Blank or the appellee as Point Blank throughout this argument as we have in the District Court. The District Court should be reversed because the Court misinterpreted the three key provisions of the contract at issue. Number one, the bid protest provision. Number two, the exclusivity provision. And number three, the best efforts provision of the contract. Okay. The record demonstrates that… Before we get into the guts of your argument, I have one practical question, which is, if we agree with your opposing counsel that the consequential damages clause means you can't get any consequential damages, my practical question is, what do you gain if we rule for you on one of these other grounds? Because what would your damages then be? Well, TYR submitted a theory of reliance damages in the District Court and submitted an expert report on that issue. There was litigation surrounding whether or not the expert report should be allowed. All of that, just tell me, if you don't get consequential damages, what does that mean, reliance damages? The amounts of money TYR expended in reliance on the contract and in reliance upon Point Blank performing its duties in accordance with the contract. The amounts that you expended just in helping to prepare the bid and those kinds of things. Yes. So there are damages, even if the court agrees that the consequential damages exclusion is enforceable, there are damages for TYR to recover in the District Court. There's also an attorney's fee provision in the contract. The prevailing party in the litigation can recover attorney's fees. So there's a practical aspect of that as well. All right. Well, you can continue on with your merits arguments. Thank you, Your Honor. The standard of review in this case is de novo. This court owes no deference to the District Court's interpretation of the contract or the District Court's determination that summary judgment was appropriate in this case. Pursuant to the paragraph 13 of the agreement that's in the appendix at page 88, the Florida law controls interpretation of the contract to the extent that it's not controlled by the Federal Acquisitions Law, TYR and Point Blank entered into this teaming agreement to respond to a solicitation from the government for what's called a soldier protective system, which is essentially a tactical vest with ballistic inserts that's designed to protect soldiers in the field. The ballistic inserts are designed to stop bullets and protect the soldiers' lives. The process was a long, drawn-out one. TYR and Point Blank entered into their first agreement in September of 2013, had an amended agreement in September of 2014. The TYR and Point Blank submission to the government was completed in February of 2015. It was identified as the top-rated private industry submission for the solicitation. And then in February of 2015, the government issued new technical specifications. This occurred after the TYR and Point Blank product was submitted, and it was backdated to December of 2014. And pursuant to these reduced technical specifications, Army NATIC government design house that was Miltek and Point Blank surreptitiously supplied ballistic materials, the same ballistic materials that were used in the TYR Point Blank submission to Miltek so that it could be used in connection with the Army NATIC submission. That submission was ultimately selected by the government. When that occurred, TYR asked Point Blank to file a bid protest in accordance with Section 5D of the agreement, and Point Blank refused to do it. We contend that's a breach of the plain language. What does the record say about what their reasons were for refusing if the record says that? I'm sorry? What does the record indicate they gave as their reasons for refusing to file the protest? The record indicates that Point Blank didn't want to disturb its relationship with the government. There's testimony in the record from Point Blank employees. Point Blank had a long-standing relationship with the government. They're the largest U.S. military supplier for this type of equipment, and they were reticent to file a bid protest because of their relationship with the government, didn't want to interfere with that, didn't want to cause a bid protest or file a bid protest and disrupt that relationship. Is that an unusual reaction in government contract law? I'm sorry, Your Honor? In government contracts of this nature, is that an unusual reason to not want to protest a bid? I would assume that happens all the time. It may happen all the time. I don't know the answer to whether it happens all the time, but I can tell you in the context of the facts of this case, it was unusual because prior to the execution of the agreement, there were extensive discussions between Mr. Beck, the CEO of Tear Tactical, and Lex Watson and other representatives of Point Blank about the importance of filing a bid protest and how Tear was hesitant to enter into this agreement with Point Blank because it wanted to ensure that Point Blank would follow through and file a bid protest. Did those discussions include a bid protest when the winning bid was not a private entity? I don't know if the discussions addressed that specific issue, but the bid protest discussions were designed around, or the bid protest discussions talked about if our bid is not selected and there are irregularities in the bidding process, as were identified in the district court and agreed upon by both of the parties, there were a number of irregularities identified and a number of internal discussions with Point Blank's officers indicated that there was division among the officers at Point Blank, some of whom thought it was appropriate to our detriment. But we think the district court misinterpreted... You rest, and your argument rests on the subcontractor responsibilities 5 and the paragraph in there that says, in the event the contractor or the subcontractor concludes that a protest is in order, the prime contractor shall be the protesting party. If it was a big concern of yours that a bid protest be filed if you did not receive the Should not the language have been a bit more explicit to make it clear that you had the say-so to insist that that happened even if Point Blank disagreed? The language is not that clear. Our CEO thought the language was clear enough that it was acceptable to him. It says, in the event the prime contractor or the subcontractor concludes that a protest is in order, the prime contractor shall be the protesting party. It could have said, shall file the protest. It says, shall be the protesting party, but you can't be the protesting party without filing the protest. So to interpret this provision as being limited to a delineation of the roles as the district court did, we think is a rewriting of the provision that excludes the words or the subcontractor from the provision, which is at odds with the way contracts should be interpreted. Clearly the words or subcontractor appear in that provision, and if those words are to have any meaning, it's a conditional phrase. In the event the prime contractor or the subcontractor concludes that a protest is in order, the prime contractor shall be the protesting party. You can't be the protesting party if you don't file the protest. We think the district court's interpretation departs from the plain language of the agreement. Could it have been more specific? Perhaps. We think it's clear enough that it's inherent in the role of being the protesting party that you have to file a protest. If it's not clear enough, it's clearly a violation of the best efforts provision that appears in the contract. That best efforts provision says the prime contractor has to do everything possible after submission of the bid to obtain the contract. Filing a bid protest is part of doing anything possible or everything possible to obtain the bid once that bid is rejected. Point Blank didn't do that. But if we conclude that you're reading of the paragraph we've just been talking about in D, 5D, is as the district court says it is, then how does the best efforts clause help you? In other words, if there's no obligation of the contractor to actually file a protest, how does the best efforts clause get you over that hump? Well, the best efforts clause supplements the responsibilities that the prime contractor has pursuant to the agreement. Under Florida law, best efforts, the definition of best efforts may vary with the circumstances surrounding the transaction. Here there was discussion about the bid protest provision. There were certainly expectations on both sides that there would be a bid protest filed in the event there were irregularities. Point Blank refused to do it. And by refusing to do it, they didn't discharge their best efforts to get the contract accepted. That's clear from the language of the agreement. We've cited some cases in our brief, First National Bank of Lake Park versus Gay. It's a Florida appeals court decision that talks about the best efforts provision. And also there's an additional case law that says when there's a dispute as to what the best efforts provision means, the answer is for the jury to determine, not to be decided on summary judgment. That's the First National Bank of Lake Park versus Gay. I'd like to touch on the exclusivity provision, which is the second issue we've raised in the case. As I indicated in the introductory comments, Point Blank supplied ballistic materials to a company called Miltek, who worked hand-in-hand with a company called Army Natick to submit a competing bid on the same project. The exclusivity provision of the agreement says each of the parties shall be exclusively restricted from individually or jointly with one or more third parties entering into an agreement with or offering any other proposal to the government with respect to the project. In your brief, you say that you wouldn't have objected if stock materials not specifically designed for an SPS bid had ended up in the competing submission. You wouldn't have complained about that. At what point does the connection or chain of supply become too attenuated that it would no longer constitute a breach of this provision? I would say that if Miltek bought materials through a catalog or didn't collaborate with TIER on the design and the testing of the materials. But how is that distinction rooted in the contract? It's rooted in the contract by the phrase, offering any other proposal to the government, either individually or jointly with one or more third parties. So the prohibition... But TIER didn't make an offering to the government. TIER didn't, no. Army Natick did. Yeah. And it was, I'm sorry, it was Point Blank, I misspoke, who worked with Army Natick to submit this proposal, right. So we... Did they work with Army Natick or with Miltek? They worked with Miltek. Miltek supplied to Army Natick. Miltek a sub or... Was Miltek in the same position that TIER was? Miltek was working on the design with Army Natick to submit to the government for the same product. I can't tell you. Was it a co-bid or was it Army Natick's bid? Army Natick was the prime contractor on the bid. So under the district court's interpretation of this, the exclusivity provision only prohibited TIER from acting as a prime contractor on a competing bid and allowed TIER... I'm sorry, allowed Point Blank to supply materials for a competing bid, to test a competing bid and manufacture a submission for a competing bid and still be in compliance with the exclusivity provision they had with TIER. We think that's inconsistent with the words of the contract, the plain meaning and plain understanding of the contract. Offering a ballistics package to be submitted in direct competition to the project that Point Blank and TIER worked on together, we think violates the exclusivity provision. We'd ask that the court reverse the district court's decision on contract interpretation and remand the case for trial. And I'll save the remaining time I have for a bundle. Thank you. Good morning, Your Honors, and may it please the court, I'm David Solomons on behalf of Point Blank, the defendant, Appelese. We ask that the careful decision of the district court be affirmed. Let me start with Section 5D of the teaming agreement, the bid protest provision. It states that in the event the prime contractor or subcontractor concludes that a protest is in order, the prime contractor shall be the protesting party supported as appropriate by the subcontractor. The district court was right to hold that this language assigns clear roles for any bid protest, but it does not impose any affirmative duty to file a protest. What does the language in the event the subcontractor concludes? You're saying that that language should be disregarded because it really did not matter whether they concluded or not you were going to call the shots. We don't think that. Well, let me just be clear, Your Honor, the essential point is that it doesn't impose an affirmative duty to file that language or the subcontractor. We do not ignore it, and it is not surplusage in our reading or the district court's reading of this provision. If you took the language and it just said, in the event the prime contractor concludes that a protest is in order, the prime contractor shall be the protesting party, you would have an open question as to who would be the protesting party in the event the prime contractor did not. The or the subcontractor plays a very important role. This language does two important things. First, it makes clear that regardless of which party wants to file a protest, only the prime contractor can be the protesting party. And second, it makes, it imposes a duty on them. It could have said, in the event the prime contractor or the subcontractor concludes the protest is in order, the prime contractor shall make the decision whether to protest and shall be the protesting party. It doesn't say those extra words. Well, it does, you're right, Your Honor, it does not say that. Although I would, I do think it is a natural implication from saying this party shall be the protesting party to mean that this party shall make a decision. But it has to say that because by law, only you as the prime contractor, only you could be the protester. The sub had no power to protest, correct? That's right. That's right. So that is obvious. Well, that's right. And, but, but I still think with that, with that role of being designated by law and by contract as the prime contractor, excuse me, as the sole protesting party, inherent is that is the discretion as to whether or not to file a protest. And any other reading of this language as imposing a duty to file a protest would in fact be in tension with the law that designates that only the prime contractor can file the protest. But the way you're reading the provision, if, if the subcontractor, subcontractor is the only one who concludes that a protest should be filed, there is no protest. So nobody's going to be the protesting party. Correct. So doesn't that render or subcontractor meaningless? No, because again, it's not meaningless because it makes clear that even in the event where the, it just doesn't do what the other side wants it to do. It's not meaningless. It says that even when the subcontractor is the only party that wants to file a protest, only the prime contractor has that role of, of, of protesting party. That language has meaning in our reading and in the district court's reading of it. What it doesn't do is it doesn't say that the prime contractor shall file a bid protest. What if it just said in the event the subcontractor concludes that a protest is in order, the prime contractor shall be the protesting party. Would you agree with just that? That that would mean that if the subcontractor makes a decision, then you would have to file the protest? No. No, your honor. I think, I think the language shall be the protesting party is an assignment of role. It is not an affirmative duty to file a protest. If the parties had wanted that, it should have said in the event the subcontractor decides a bid protest is in order, the prime contractor shall file a protest. But it doesn't, it does not say that, and that is an important textual distinction. And if the court, to the extent the court thinks it's ambiguous, and we strongly urge that it is not, and the district court found that it is not, and you looked at the context in the agreement, you looked at the drafting history of this provision, you come out to the same place, your honor. This is in the section of the agreement that details the subcontractor's duties, not the prime contractor's duties, and the version of this agreement that was initially drafted by Teer and sent over for review and inclusion to the agreement had a second sentence. In fact, if you look at the final version of the agreement, you'll see two periods at the end of this sentence, and it's because they took the second sentence out. They didn't change the first sentence. It said exactly what this provision says now. But they had a second sentence that said if the subcontractor decides that a protest is in order, but the prime contractor does not wish to pursue a protest, then the subcontractor is authorized to pursue the protest for the parties. So Teer tried to get this situation covered in the agreement, and it was rejected, and it was taken out. And the meaning of that first sentence didn't change just because they took the second sentence out. And there's no way the first sentence means if the subcontractor wants to file a protest, the prime contractor has to, and then have a second sentence that says if the subcontractor wants to and the prime contractor doesn't, the subcontractor can file it himself. That doesn't make any sense. Whether you look at the history, the context, or the plain language, it all comes out the same way, Your Honor. That 5B does not impose— If the subcontractor shall use its best efforts after submission of the proposal to the government to obtain the contract, if that does not mean filing a bid protest when, in good faith, one could do so, what would your best efforts be? The Best Efforts Clause has a very important role, and if you look at it, what 4B covers is that period of time and that process between which you put in— Tell me what it means. Give me some examples of what your best efforts would be. Sure. So that same provision that has the Best Efforts Clause, for example, says that the prime contractor shall be the sole contact for the government, and you have to provide accurate and timely information to questions after the proposal has been filed, and you have to negotiate the contract if you win, you have to negotiate the contract with your best efforts to try to actually achieve the contract. That's what the Best Efforts Provision governs. It governs that process. After you put your proposal in, you're going back and forth, there's all these communications with the government as they make their final decision as to who to award the contract to, and then you have the negotiation process, and the prime contractor absolutely has a duty to use best efforts to obtain that contract, and that's in that process. What it doesn't do is it doesn't say if, in the circumstances where the government has canceled the solicitation, by the way, let me just make this point very quickly. One of the deep confusions I think the other side has here is it keeps thinking about Army Natick as a competitor that filed a proposal in response to the solicitation, and that they were the winning bidder instead of us. I think you heard that today. That's just completely wrong. The solicitation was only open to private vendors, and the solicitation said in addition to being private vendors to having to comply with all of the specifications here, one of the requirements to getting the contract at the end of the day is that your design has to be selected as preferable by soldiers who use it in the field in what they call a human factor evaluations, and it has to perform better than two government designs that were used as the baseline for that human factor evaluation, and the Army Natick design was one of those baselines. The other was an older version of the government's protective systems. Neither one of the government systems complied with all of the solicitation requirements, all of the specifications. They weren't required to. They weren't, they didn't, Army Natick did not submit a proposal on the solicitation. You'll look in vain for anything like that in the record. The term proposal is defined in the agreement. The term project is defined in the agreement. Project is the solicitation, and the proposal is the formal submission in response to the solicitation. Army Natick never submitted, it wasn't seeking a contract with the government. It is the government. It was used as a baseline to decide whether to award the contract to any of the private vendors, and Point Blank Interior's submission was the best of all of those private vendors, and we thought we had it. We were expecting to get it, and we didn't get it, because at the end of the day, the valuations that came in from the soldiers thought that the government designs gave more range of motion, were more easy to don and doff, and they rated ours second. They didn't rate ours ahead of the government submissions, and so what the Army did was it canceled the solicitation. This is why the whole concept of a bid protest... Are you suggesting a bid protest wouldn't have gotten you very far? Oh, I absolutely am suggesting that, Your Honor. And does the record bear that out? We think it does in a couple of important ways, so again, TIER did file a bid protest despite the language in the agreement that says only we can be the protesting party and despite the law, and that was rejected, and certainly it was rejected in part because they didn't have standing, but if you look at the letter that PEO soldier used in rejecting their bid protest, and this is at 1409 of the appendix, it's very clear. The letter says... It explained that the solicitation stipulated that for a vendor design to be selected, it had to be ranked higher than the government designs in the human factor evaluations, and that ours was not, and that's the reason why it wasn't awarded, and again, the complaint that TIER made in the bid protest was, yeah, but the military designs didn't comply with all the specifications that we had to. Well, that's true. It didn't, but it wasn't required to under the solicitation. The solicitation was only for private vendors. It just served as a baseline, so there's this deep confusion at the heart of this dispute, and when we looked at it, what we did, by the way, in terms of best efforts, if you wanted to think about what the process was with regard to making a decision about a bid protest, we don't think the best efforts clause applies to that scenario at all, and for the reasons the district court gave, we think it would do harm to the structure of the agreement to read it that way, but if you look at the actions that were taken, what happened was, as my friend on the other side just said, the parties got together, they came up with the list of issues, they met about them, they debated them, there were some on point-blank side that absolutely thought we had some good arguments. You can see why it felt unfair from the point of view, if you go through this process and then you lose because your vests weren't as comfortable as vests that weren't as protective. That seems unfair, but when you looked at the exact terms of the solicitation, it was not a strong argument to make. The government reserved the right, unilaterally, to withdraw the solicitation and not make any award, and that's exactly what it did. You can't sue or challenge and say, you awarded it to this contractor that didn't comply with all the requirements. They canceled the solicitation, and this is really walked through in detail in the Hughes report, who was our expert, and he walks through the language. This is at 397 and 402 of the appendix, if you want to see all of it put together in one place and see how the requirements of the solicitation just weren't satisfied, unfortunately, for us. And the other thing I would point out, it wasn't just about, you know, doing harm to our relationship with the government. Was that a factor that was considered? Of course it was. Any government contractor, when they're deciding whether to file a bid protest, would not be well served by just ignoring that as an issue. But it was much more than that. There was this careful collaboration that took place to identify issues, and if you look at Appendix 282, you'll see deposition testimony from Tom Stephan, who is the Executive Vice President for Legal and Special Projects at Point Blank. And he explained the process in detail, and he said once they identified all of those lists, and you have to do this very quickly, you only have 10 days. Once they identified all of those lists of issues, they gave it to their government contract lawyers, their outside counsel, who reviewed it, and they came back, and he says that after the attorneys reviewed and evaluated it, and the company determined that on the advice of counsel, that the prospects of prevailing, if we filed a protest, were not great. That's it, again, 282 of the appendix. This was a thorough process. And do you want to touch on the exclusivity argument and the time you have left? Yes, Your Honor. Again, the point I just made about how the exclusivity provision deals with offering a proposal to the government with respect to the project. Project is defined to mean the specific SPS solicitation. Proposal is defined to mean a formal submission in response to the solicitation. It's used as a capital P. It's all very literal, but you can understand that maybe this is what has rankled them so much. It doesn't seem very sporting when they're working with you on a bid, and unbeknownst to them, you're out helping a sub who's working with a competitor. Not literally a competitor, but the government, somebody who could undo your bid. You can understand why that doesn't seem, again, as I said, quite sporting. Well, I guess I can, from an empathetic standpoint, I can. From a legal standpoint, looking at the language of the agreement, I can, Your Honor. In fact, here's one of the important things I think to keep in mind about the context of this case as well. And that is that Point Blank and Tear are competitors with each other, generally speaking, in the market for ballistics. And they came together. Do you think they would have entered into the contract, though, if they had not all the while you were working with a sub for a competitor? Well, again, I don't think that's actually a fair characterization of what happened. But it depends whether they wanted to pair up with us and make this solicitation or not. But nothing in the agreement... You have two more minutes because your opposing counsel had two extra minutes. Thank you, Your Honor. So while the parties who were normally competitors came together for the sole purpose of putting in a proposal in response to this solicitation, they agreed not to submit any competing proposals for the solicitation. But that's all that they agreed to. Nothing in the agreement restricted either party from continuing to sell their products and services as vendors. Point Blank did here what it always does. It's a vendor. And it sells its products and services to people who want to buy it. Army... Excuse me. Miltec is part of the Montana State University. And we had an arrangement with them before. We've had an arrangement with them since. They buy things from us as a vendor. Many of the things they did buy were just off-the-shelf products. Otherwise, what they do is they put out their own sort of bidding process and they come up with a design and they ask someone to make it. And so we did that. And were we aware that some of those were going to be used as part of the Army NADx design that would serve as the baseline? Yes. The record shows that we were aware that some of that was the case. But nothing in the agreement limited either party's ability to continue to be a vendor. It only limited their ability to either enter into an agreement with the government about the solicitation or to offer a competing proposal on the solicitation, which has defined meanings. And in fact, neither Army NADx nor Miltec nor us submitted any proposal within the meaning of this agreement on this project. Does it make any difference the proposal is a little P as opposed to a capital P in the language of the contract? I don't think so. The capital P refers to this, the particular proposal that we were going to file jointly and the language is any other proposal. But I still think a proposal to a solicitation has a certain meaning. You're not allowed to offer a proposal to a solicitation. And again, there's a very important textual difference between agreeing not to offer a proposal to a solicitation and saying I'm not going to be a vendor to other entities that might use my products in their submission, even though that's actually not what Army NADx did here. If the Court has no more questions, thank you. Just a couple of points on rebuttal, if it pleases the Court. First of all, the language, I'd like to address the question, the language proposed by Teer that Teer wanted to get into the bid protest provision that was not agreed to by the parties. The reason that wasn't agreed to by the parties is because it wasn't legally permissible. Teer couldn't be a protesting party under federal acquisition law. Only the prime contractor can be the protesting party. Teer wanted to be, but recognized through the negotiations and discussions with Mr. Stephan, the Vice President of Legal Affairs and Contracting, for a point blank that they couldn't be the protesting party. But you could have had language, though, that said you can't be the protesting party, but if we tell you to protest, you've got to do it. And that's what the language that we agreed to, and that's what we... I got it from his description, and we'll look at it better, but that the excise language might have done something along those lines. The excise language shows what Teer intended by this provision, though. Teer wanted to be able to direct point blank to file a protest. Point blank understood that when they entered into the agreement. Both parties understood that when they entered into the agreement. There's nothing in that bid protest provision that says point blank has the inherent discretion to make the determination. Absolutely nothing. There are other provisions in the agreement that reserve discretion of point blank on certain issues, but not the bid protest provision. And again, the best efforts provision we also think is very important here. The best efforts provision was included into the agreement. It has meaning. It can't be ignored. It was properly pleaded below. It was addressed in the briefing on summary judgment, and it was characterized by point blank. Hail Mary passed. Well, sometimes prayers are answered, and best efforts provision was included in that agreement, and under Florida law, it has meaning, and it carries weight, and to the extent the district court's constructions of the bid protest provision and the exclusivity provision are deemed correct by the court, we think that the case should be remanded to determine whether or not the bid protest provision, I'm sorry, the best efforts provision was violated here, because that under Florida law is a fact question. We think the facts are more than sufficient to show that best efforts doesn't include going behind your partner's back to submit product for a competing bid, whether you call it a competing bid or a competing submission. It was a product that directly competed with the tier point blank submission, and it was a product that was approved by the government as meeting the human factors evaluation test. I see my time is up. Thank you, Your Honor, for your time. We appreciate it, and we request that the district court's decision be reversed and the case be remanded. Thank you.